UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

CHARLES N. BARNEY, # 574515,           )
                                       )
                    Plaintiff,         )      Case No. 1:08-cv-694
                                       )
v.                                     )      Honorable Paul L. Maloney
                                       )
CARMEN PALMER, et al.,                 )      **REPORT AND RECOMMENDATION**
                                       )
                    Defendants.        )
_____)

            This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  On

November 8, 2007, plaintiff filed his complaint in the United States District Court for the Eastern

District of Michigan.  He filed his first amended complaint on April 10, 2008.  (docket # 18).  On

July 23, 2008, the case was transferred here.  (docket # 36).

            Plaintiff is currently an inmate at the Parnall Correctional Facility (SMT).  (docket

# 41).  His complaint, as amended, relates to the conditions of his confinement at the Riverside

Correctional Facility (RCF), specifically, the adequacy of the medical care he received for a skin

condition.  Plaintiff named five State employees at RCF[1] as defendants in their individual and

official capacities: (1) Warden, Carmen Palmer; (2) Nurse Supervisor, Julie Saladin; (3) Physician's

Assistant David DeGraaf; (4) Haresh Pandya, M.D.; and (5) George Pramstaller, M.D.  Plaintiff

alleges that members of this group, collectively referred to herein as the state defendants, gave him

the wrong medications, misdiagnosed his systemic lupus erythematosus as a fungus or skin infection,

_____

            [1]The State of Michigan closed the RCF on November 3, 2007.

and should have referred him to a dermatologist. He claims that the state defendants' actions violated his constitutional rights under the Eighth Amendment's Cruel and Unusual Punishments Clause and constituted medical malpractice under state law. (Am. Compl., ¶ 47-49). Plaintiff makes conclusory allegations that his transfers between various Michigan prisons were "retaliatory" (*Id.* at ¶¶ 26, 30, 34). He named John and Jane Doe medical service providers at RCF as defendants.

A second group of defendants consists of Correctional Medical Services, Inc. (CMS) and its employees Christine Meyer, D.O., Craig Hutchinson, M.D., and Brendan Sherry, P.A. Plaintiff's claims against these defendants, collectively referred to herein as the CMS defendants, are based on the medical care he received at RCF, the Thumb Correctional Facility (TCF), the Gus Harrison Correctional Facility (ARF), and the Parr Highway Correctional Facility (ATF) during the period from March 23, 2006 through July 2007. Plaintiff seeks an award of monetary damages and declaratory relief against all defendants. (docket # 18 at 19).

The matter is before the court on an April 28, 2008 motion for summary judgment by the state defendants. (docket # 26). Defendants argue that they are entitled to dismissal of plaintiff's claims with prejudice on the following grounds: (1) plaintiff's claims for monetary damages against them in their official capacities are barred by Eleventh Amendment immunity; (2) plaintiff has not alleged viable Eighth Amendment claims; and (3) plaintiff's state-law malpractice claims must be dismissed because he did not file the affidavit of merit required under state law. Alternatively, defendants seek dismissal of plaintiff's claims without prejudice based on the affirmative defense of plaintiff's failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). On July 28, 2009, plaintiff filed his response. (docket # 48). For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, and that all

plaintiff's claims against defendants Palmer, Saladin, DeGraff, Pandya, and Pramstaller be dismissed with prejudice. Alternatively, I recommend that all plaintiff's claims against these defendants be dismissed without prejudice for lack of exhaustion, except plaintiff's claims against defendants Saladin and Pandya asserting that they should not have prescribed Nizoral and should have referred plaintiff to a dermatologist because they were not skin specialists.

I further recommend that all plaintiff's claims against John and Jane Doe defendants be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff has never amended his complaint to allege the identity of these individuals and they have never been served with process or otherwise appeared in this lawsuit. This report and recommendation serves as plaintiff's notice of the impending dismissal of all his claims against all John Doe and Jane Doe defendants.

This report and recommendation does not address plaintiff's claims against CMS and its employees, defendants Mayer, Hutchinson and Sherry. Plaintiff's claims against these four defendants remain pending.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d

573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. Fed. R. Civ. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel*

*v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to portion of the state defendants' motion seeking dismissal of plaintiff's claims under 42 U.S.C. § 1997e(a) because lack of exhaustion is an affirmative defense.

### A.  Standards Applicable to Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v.*

*Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a).

Multiple versions of MDOC Policy Directive 03.02.130 were in effect during the relevant time period. Nevertheless, all versions of this policy directive in effect since April 2003

have required that the prisoner name within the body of the grievance the person whose conduct is challenged. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and affirmed it the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. 316 F. App'x at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the prisoner's grievance. The following is an overview of the grievance process.[2] Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Davis v. Straub*, No. 1:07-cv-156, 2008 WL 696603, at * 5 (W.D. Mich. Mar. 13, 2008).

---

[2]The paragraph references in this section correspond to the current version of Policy Directive 03.02.130 (effective 7/9/07).

The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. Prisoners are required to use "a Prisoner/Parolee Grievance (CSJ 247A) [form] to file a Step I grievance." *Id.* at ¶ R. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Regional Health Administrator is the Step II respondent for a grievance regarding health care issues. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). "The BHCS Administrator shall ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner." *Id.* Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing ...." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See*

*Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999)("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004).

## Proposed Findings of Fact

The following facts are beyond genuine issue. On March 23, 2006, plaintiff arrived at RCF, and shortly thereafter he began to develop reddish sores behind his ear and on his face. He was examined by Physician's Assistant David DeGraaf and was provided with antibiotic ointment for his skin condition. (Am. Compl., ¶ 11, docket # 18).[3] Plaintiff states that he was provided with additional antibiotic ointment in April of 2006. (*Id.*, ¶ 12). Plaintiff was examined in June of 2006 and provided with medication for treatment of what was then believed to be a fungal condition. (*Id.*, ¶ 13). When plaintiff was examined by a nurse in July 2006, he reported that the antibiotic cream was not working. Plaintiff was supplied with a new hydrocortisone cream medication. (*Id.*, ¶ 14). On August 8, 2006, plaintiff was examined and provided with additional hydrocortisone cream. (*Id.*, ¶ 16). He received a blood test on August 17, 2006. (*Id.*, ¶ 17). On September 11, 2006, plaintiff

---

[3]Plaintiff's amended complaint is verified under penalty of perjury. (docket # 18 at 3). The portions of plaintiff's pleading satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure are considered as his affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n/ 13 (6th Cir. 2000). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir.2006).

was examined by Physician's Assistant Sherry. A new treatment plan was initiated which included additional antibiotics. (*Id.*, ¶ 21). Plaintiff received another blood test on October 9, 2006. (*Id.*, ¶ 21). In November 2006, plaintiff was examined by Physician's Assistant Sherry. Plaintiff received a new prescription for the drug "Ketoconazole (also known as Nizoral) in 200 mg. tablets." (*Id.*, ¶ 25). Plaintiff alleges that all the aforementioned changes in his medical treatment regimen were approved by Dr. Pandya, Dr. Meyer, or Dr. Pramstaller. (*Id.*, ¶¶ 12-22, 25).

In January 2007, plaintiff was transferred to the Thumb Correctional Facility (TCF). (Am. Compl., ¶ 26). On January 12, 2007, Dr. Pandya provided this response to plaintiff's January 3, 2007 letter expressing concern regarding his Nizoral prescription:

> I am in receipt of your letter dated 01.03.07. Dr. Meyer and PA Sherry have done all the necessary blood tests. It showed that you most likely do not have an infection in your skin. We do get surprises now and then, hence they prescribed the medication. Considering your concern about the Nizoral [Ketoconazole] that is prescribed, I have reviewed your case. We will be doing a skin biopsy from 3-4 sites using a skin biopsy punch. A report on the biopsy will help us further diagnosing your problem. The dentist may do a biopsy from the spot in your mouth.

(*Id.*, ¶ 28). A doctor at TCF performed a skin biopsy and a blood test in late January 2007. (*Id.*, ¶ 30).

Plaintiff was transferred to the Gus Harrison Correctional Facility (ARF) in January or February 2007. (Am. Compl., ¶¶ 30-31). He received another blood test and was examined by a physician's assistant at ARF in mid-March 2007. (*Id.*, ¶ 31). He was transferred to the Parr Highway Correctional Facility (ATF) in late March or early April 2007. (*Id.*, ¶¶ 34-35). In July of 2007, plaintiff was examined by Dr. Broschart, a dermatologist. Dr. Broschart diagnosed plaintiff's condition as lupus erythematosus. She provided plaintiff with prescriptions for Floucinolone

Acetonide Cream and Plaquenil and those medications have kept plaintiff's lupus under control. (*Id.*, ¶¶ 43-46).

### 1.     Grievance No. RCF-06-11-1063-12d3

Plaintiff filed Grievance No. RCF-06-11-1063-12d3 on October 27, 2006. The copy of this grievance filed with the court (docket # 48, Attachment A) is not legible. Plaintiff states in his verified amended complaint that, "In his grievance, [he] claimed to the best of his knowledge there [was] something wrong with his blood which [was] causing his skin sores and various symptoms. Plaintiff asserted that RCF/CMS [would] not do a [blood] test to see [what] was wrong with him and his skin." (Am. Compl., ¶ 23).

On November 21, 2006, Nurse Supervisor Saladin provided a lengthy Step I grievance response:

> The Grievant was interviewed by J. Salidin, Nurse Supervisor on November 21, 2006 at 1340.
>
> The Grievant alleges that he is not receiving appropriate medical care to determine what is wrong with him. Grievant seeks as relief to have a test to see what is infecting him.
>
> Investigation of the Grievant's issue reveals that healthcare received a healthcare kite on 6/25/06 with a complaint and the patient was provided with written instruction and an approximate date for an appointment. The patient was seen on 6/30/06 by the nurse and provided with a treatment plan as well as a follow up appointment. The patient was seen again on 7/5/06 for another appointment and the nurse put the patient[']s chart into the Medical Services Provider (MSP) for review. A medication was ordered for treatment on 7/14/06. The patient was seen by the MSP on 8/8/06 and a thorough exam was completed with documentation that the patient became angry and demanded multiple tests and specialist appointments. Medications were ordered, testing was ordered, and a referral to another MSP made. Lab testing was completed on 8/17/06. The patient kited on 8/28/06 for a refill of the medications prescribed and on 8/29/06 kited that the medications were not working. The patient was seen by a doctor on 9/11/06 and assessed with a new treatment plan started and a follow up appointment. Further testing was completed on 10/09/06. The patient did not show for an appointment on 10/11/06 and was rescheduled for an appointment at a later date.

The patient was seen on 11/2/06 by nursing due to further problems. The complaints were discussed with the MSP and he scheduled him to be seen with him [sic]. The patient was seen on 11/6/06 with further assessment completed and more testing ordered. An order was sent to the Regional Medical Director for approval and it was determined by the RMO that a different medication would be the preferred treatment. The medication was ordered on 11/15/06 and started. The patient states that he knows what is wrong with him and the MSP's are just not listening.

Based on the above, the patient has been seen on a regular and consistent basis with treatment plans as medically indicated. The patient states that he is not happy with the treatment as it [] started 5 days ago and has not helped and he knows what he needs despite the recommendations made by two different MSPs and the RMO. The patient will be scheduled for a recheck with the MSP after his test results come back.

(docket # 48, Attachment).

Plaintiff filed what appears to be a portion of a Step II grievance response dated December 29, 2006, signed by Julie VanSetters (docket # 48, Attachment A). The words "see attached" appear on the face of this document, but the attachment was not filed.

On May 11, 2007, the Michigan Department of Corrections informed plaintiff that his III appeal would not be processed because he had not completed Step II before appealing to Step III. Plaintiff states that he failed to attach Step I and II responses to his Step III appeal. (Plaintiff's Brief at 4, docket # 48). There is no evidence that plaintiff attempted to cure this deficiency. Plaintiff did not secure a Step III decision on this grievance.

2.      **Grievance No. ATF-07-04-333-12d3**

On April 16, 2007, while plaintiff was an inmate at ATF, he filed a grievance which was assigned Grievance No. ATF-07-04-333-12d3. Plaintiff alleges that this grievance was "against

ATF/CMS, i.e., Dr. D. Brady." (Am. Compl., ¶ 36). Grievance No. ATF-07-04-333-12d3[4] is quoted

below:

> In the policy directive[s] 03.04.101 and 03.04.100 access to medical care, I am guaranteed medical assentient [sic] through the MDOC bureau of health care services (BHCS) P.O. Box 30003, Lansing, MI 40909, I have a skin infection that has spread all over my face, back, ears, eyes and the top of my head and the medical Dept. at RCF, TCF, ARF and now [I]'m at ATF, Parr Highway Correctional FAC[,] has failed to schedule[] me to be examined by a skin specialist, a dermatologis[t]. [T]his clearly violates my 8[th] [A]mendment [rights]. [A]ll health care providers shall comply with the health record documentation requirements outlined in the health care records management standards manual. All integrated health record [sic] [S]aladin, Nurse [S]upervisor, (RCF), L. Hudson, RUM (RCF), Haresh Pandya, M.D., DR. MAEYER and PA Sherry [] stated: It showed that meaning [sic] the <u>Blood test</u>, that you Mr. [C]harles Barney (574515) most likely do not have an infection on your skin. [W]e do get <u>surprises now</u> and <u>then</u>, hence they prescribed the Nizoral that is prescribed. I have reviewed your case. We will be doing a skin biopsy from 3-4 sites using a biopsy punch. A report on the biopsy will help us further in diagnosing your [condition]. The dentist may do a biopsy from the spot in your mouth. But these people are not [dermatologists] so they are not skin specialist[s]. I still have the same skin infection and this has not been resolved by anyone for a year now. I need to be seen by a [dermatologist] to help with my skin infection.

The Step I response is dated April 27, 2007. It states that plaintiff was examined by a physician's

assistant on March 20, 2007, before he was transferred to ATF. Plaintiff arrived at ATF on April

10, 2007, and a week later medical staff submitted a request for approval of a consultative

examination by a dermatologist. The Step I grievance response states that CMS denied this request

for an examination by a specialist because plaintiff's lesions could be treated by a medical service

provider.

Plaintiff pursued a Step II appeal. The Step II response is dated June 6, 2007. It

states that CMS had denied the request for an examination by a dermatologist because plaintiff's skin

---

[4] Grievance No. ATF-07-04-333-12d3 and the Step I, II and III responses are found at docket # 26, Ex. C and docket # 48, Attachment A.

lesions could be treated by the medical service provider.  It summarized medical care that plaintiff

had received since filing this grievance.  The conclusion of the Step II response is quoted below:

> The issue presented in this grievance has been reviewed by health care staff.  Based on the allegations contained within, it will be reviewed further for quality assurance purposes.  If this review suggests that a change to the grievant's care plan should be made, grievant will be called out to discuss these findings.  If there are no such findings, the matter will be considered closed as it pertains to the grievant.

Plaintiff filed a Step III appeal.  The Step III response is dated August 30, 2007, and

it states that plaintiff continued to receive regular medical treatment.  The Step III response noted

that plaintiff was examined by a dermatologist in July 2007.  The Step III response concludes with

a statement that, "Grievant's medical needs are being addressed."  Grievance No. ATF-07-04-333-

12d3 is the only grievance that plaintiff pursued through all three steps of the MDOC's grievance

process.  (docket #26, Ex. A, Armstrong Aff. ¶ 17; Ex. B Grievance Inquiry Screen).

## Discussion

### 1.    Mootness

Plaintiff is currently an inmate at the Parnall Correctional Facility (SMT).  His claims

for declaratory relief against the state defendants regarding the medical care he received at RCF are

moot as a result of his confinement at SMT.  *See Cardinal v. Metrish*, 564 F.3d 794, 789-99 (6th Cir.

2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

### 2.    Eleventh Amendment Immunity

Plaintiff has sued the state defendants for damages in their official capacities.

Eleventh Amendment immunity bars these claims.  The Eleventh Amendment bars suit in federal

court against a state and its departments or agencies unless the state has waived its sovereign

immunity or unequivocally consented to be sued.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The State of Michigan has not consented to civil rights suits in federal court.  *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004)); *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986).  A suit against a state officer in his official capacity is simply another way of pleading an action against the state.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008).  Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.  Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against defendants in their official capacities.

3. **Eighth Amendment Claims**

Defendants argue that plaintiff's complaint fails to allege viable claims under the Eighth Amendment's Cruel and Unusual Punishments Clause against any of the moving defendants. (Defendants' Brief at 4-5).[5]  Upon review, I find that plaintiff has not alleged facts sufficient to state an Eighth Amendment claim.  His allegations against the state defendants are based on his disagreement with the appropriateness of the medical care that he admittedly received.  His claims are, at most, state-law medical malpractice claims.

---

[5]This portion of defendants' motion is presented to the court in a somewhat awkward posture. Defendants did not request entry of judgment in their favor on the merits of plaintiff's purported Eighth Amendment claims, and did not support their motion with authenticated copies of plaintiff's medical records and affidavits from doctors and other medical professionals.  Instead, defendants request dismissal of these claims for failure to state a claim.  (Plaintiff's Brief at 4-5).  Accordingly, the Rule 12(b)(6) standard is being applied in this section, and the court is limited to considering the adequacy of the allegations made in plaintiff's amended complaint.  (docket # 18).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. I find that no reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against these defendants.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The mere presence of a serious medical condition is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). Plaintiff's allegations, taken as true for present purposes, could support a finding in his favor on the objective component of Eight Amendment claims.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims . . . ."); *accord Mabry v. Antonini*, 289 F. App'x 895, 903 (6th Cir. 2008) ("'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law.'") (quoting *Westlake*, 537 F.2d 860 n.5).

Plaintiff has not alleged facts sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against any of the state defendants. Warden Carmen Palmer was not a medical care provider. (Am. Compl., ¶ 5). Furthermore, she cannot be held liable under a *respondeat superior* theory for the acts of health care staff. *See Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Nurse Supervisor Saladin is not alleged to have had any role in providing plaintiff's medical care. She could not prescribe medications nor overrule the medical judgments of physicians. Defendant Saladin cannot be held liable based on her authorship of the Step I response to one of plaintiff's grievances. Plaintiff alleges that Physician's Assistant DeGraaf and Doctors Pandya and Pramstaller gave him the wrong medications, misdiagnosed his systemic lupus erythematosus as a fungus or skin infection, and should have referred him to a specialist. (Am. Compl., ¶¶ 48, 49). Plaintiff's allegations that these three treating medical professionals "should have" provided him with "different" medical care and referred him to someone with greater specialization in a particular area are at best, state-law malpractice claims. Plaintiff's disagreement with defendants' diagnosis and treatment falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, No. 08-3427, 2009 WL

3049200, at * 1 (6th Cir. Sept. 24, 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006).  I find that the state defendants are entitled to dismissal of plaintiff's purported Eighth Amendment claims.

### 4. State-Law Claims

Plaintiff did not comply with the notice of intent and other statutory prerequisites to bringing a medical malpractice claim under Michigan law.  *See* Mich. Comp. Laws §§ 600.2912b and 600.2912d; *Burton v. Reed City Hosp.*, 691 N.W.2d 424, 427-28 (Mich. 2005).  His state-law medical malpractice claims against defendants should be dismissed.

Alternatively, I find that plaintiff has abandoned all his state-law claims and that they should be dismissed on that basis.  Plaintiff's brief in response to defendants' motion unambiguously states that he is not asking the court to exercise supplemental jurisdiction and that he is not alleging medical malpractice or any other state-law claims against defendants.  Accordingly, I recommend that all plaintiff's state-law claims be dismissed.

### 5. Exhaustion of Administrative Remedies

Alternatively, defendants Palmer, Saladin, DeGraff, Pandya, and Pramstaller seek dismissal of all plaintiff's claims without prejudice on the ground that plaintiff did not exhaust his available administrative remedies on his claims against them as is required by 42 U.S.C. § 1997e(a).  Upon review, I find that plaintiff did not properly exhaust his administrative remedies on his claims against any of the moving defendants other than his claims against Dr. Pandya and Nurse Supervisor Saladin claiming that "they" should not have prescribed Nizoral as treatment for plaintiff's skin

condition and that they should have referred plaintiff to a dermatologist.  All plaintiff's other claims

against the moving defendants should be dismissed without prejudice under 42 U.S.C. § 1997e(a).

"Congress enacted the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-

71, as amended, 42 U.S.C. § 1997e *et seq.* in 1996 in the wake of a sharp rise in prisoner litigation

in the federal courts.  The PLRA contains a variety of provisions designed to bring this litigation

under control . . . .  A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits'

is an 'invigorated' exhaustion provision, § 1997e(a)."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

"The PLRA attempts to eliminate unwarranted federal interference with the administration of

prisons, and thus seeks to afford corrections officials time and opportunity to address complaints

internally before allowing initiation of a federal case."  *Id.* at 93.  It attempts to reduce the quantity

and improve the quality of prisoner suits.  *Id.* at 94.  Requiring proper exhaustion serves all of these

goals:

> Requiring proper exhaustion serves all of these goals.  It gives prisoners an effective
> incentive to make full use of the prison grievance process and accordingly provides prisons
> with a fair opportunity to correct their own errors.  This is particularly important in relation
> to state corrections systems because it is "difficult to imagine an activity in which a State has
> a stronger interest, or one that is more intricately bound up with state laws, regulations, and
> procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475,
> 491-492, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

> Proper exhaustion reduces the quantity of prisoner suits because some prisoners are
> successful in the administrative process, and others are persuaded by the proceedings not to
> file an action in federal court.  Finally, proper exhaustion improves the quality of those
> prisoner suits that are eventually filed because proper exhaustion often results in the creation
> of an administrative record that is helpful to the court.  When a grievance is filed shortly after
> the event giving rise to the grievance, witnesses can be identified and questioned while
> memories are still fresh, and evidence can be gathered and preserved.

*Woodford*, 548 U.S. at 94-95.

"The exhaustion provision of the PLRA states: 'No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.'" *Jones v. Bock*, 549 U.S. 199, 204 (2007) (quoting 42 U.S.C. § 1997e(a)). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. In order for a claim to be exhausted it must be fairly presented to prison officials through the grievance process. *Woodford*, 548 U.S. at 94. In addition, the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. at 218. At all times relevant to plaintiff's complaint, the MDOC has required a great deal of specificity. Under Policy Directive No. 03.02.130, plaintiff was "explicitly required to name each person against whom he grieved." *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009). His grievances were required to provide "the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be provided." Policy Directive 03.02.130; *see Vandiver v. Correctional Med. Services*, 326 F. App'x 885, 888 (6th Cir. 2009). Applying these standards, it is patent that plaintiff did not properly exhaust his available administrative remedies on almost all of the claims he is now asserting against defendants.

Plaintiff did not pursue Grievance No. RCF-06-11-1063-12d3 through a Step III decision. This grievance did not exhaust his administrative remedies on any claims. It is well-established that a prisoner does not properly exhaust his administrative remedies by abandoning them before completing the State's process. *See Woodford v. Ngo*, 548 U.S. at 93. Plaintiff did not file a grievance regarding his purportedly retaliatory transfers. The only grievance that plaintiff pursued through Step III decision was Grievance No. ATF-2007-04-333-12d3. He states in his verified amended complaint that this grievance was filed "against ATF/CMS, i.e., Dr. D. Brady." (Am. Compl., ¶ 36). Defendants Palmer, DeGraaf, and Pramstaller were not mentioned in this grievance. Although the grievance is not a model of clarity, it does contain a passing reference to defendants Saladin and Pandya and complains that "they" should not have prescribed Nizoral and should have referred plaintiff to a dermatologist because they were not skin specialists.

All defendants, except Saladin and Pandya, have borne their burden of showing that no reasonable trier of fact could find in plaintiff's favor on the exhaustion defense. Saladin and Pandya are not entitled to dismissal on this ground.

### Recommended Disposition

For the foregoing reasons, I recommend that the motion for summary judgment by defendants Palmer, Saladin, DeGraff, Pandya, and Pramstaller (docket # 26) be granted, and that all plaintiff's claims against these defendants be dismissed with prejudice. Alternatively, I recommend that all plaintiff's claims against these defendants be dismissed without prejudice for lack of exhaustion under 42 U.S.C. § 1997e(a), except plaintiff's claims against defendants Saladin

and Pandya asserting that they should not have prescribed Nizoral and should have referred plaintiff to a dermatologist because they were not skin specialists.

I further recommend that the court dismiss all plaintiff's claims against John and Jane Doe defendants without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of the impending dismissal of all his claims against the Doe defendants.

This report and recommendation does not address plaintiff's claims against CMS and its employees, defendants Meyer, Hutchinson, and Sherry. Plaintiff's claims against these four defendants remain pending.


Dated:   September 29, 2009          /s/  Joseph G. Scoville
                                     United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).